Brad H. Bearnson (I.S.B. 7086)
Wayne K. Caldwell (I.S.B. 8095)
Aaron K. Bergman (I.S.B. 8878)
BEARNSON & CALDWELL, LLC
399 North Main, Suite 270
Logan, Utah 84321
(435)752-6300 – Telephone
(435)752-6301 - Facsimile
Email: bbearnson@bearnsonlaw.com
Email: wcaldwell@bearnsonlaw.com
Email: abergman@bearnsonlaw.com
Please cc emails to: mkissner@bearnsonlaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY SWOPE and MARLA SWOPE, individually and on behalf of B.S., | Case No. 4:17-cv-00113-BLW |
| Plaintiffs, | **FIRST AMENDED COMPLAINT** |
| vs. | **WITH** |
| ONEIDA SCHOOL DISTRICT NO. 351, a county school district; DAVID RISENMAY, in his individual and official capacities; and TERRI SORENSEN, in her individual and official capacities, | **JURY DEMAND** |
| Defendants. | |

COME NOW Plaintiffs TIMOTHY SWOPE and MARLA SWOPE, individually

and on behalf of their son B.S., by and through legal counsel Aaron K. Bergman and

BEARNSON & CALDWELL, LLC, and hereby complain against Defendants ONEIDA

SCHOOL DISTRICT NO. 351, a county school district; DAVID RISENMAY, in his individual and official capacities; and TERRI SORENSEN, in her individual and official capacities, as follows:

## NATURE OF ACTION

This is a civil rights action brought pursuant to the Individuals with Disabilities Education Act, the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and 42 U.S.C. § 1983. Declaratory relief, compensatory relief, and general and special damages are sought, as well as costs, interest and attorney's fees. Also raised are two State claims, one statutory, and one common law.

## PARTIES

1.     Plaintiff B.S. is a minor individual residing in Oneida County, ID.

2.     Plaintiffs TIMOTHY SWOPE and MARLA SWOPE are individuals residing in Oneida County, ID, and are the biological father and mother of B.S.

3.     Defendant ONEIDA SCHOOL DISTRICT NO. 351 is a county school district for the county of Oneida, Idaho.

4.     Defendant DAVID RISENMAY is an individual who under information and belief resides in Oneida County, Idaho, and who previously acted as the Superintendent for Defendant Oneida School District.

5.     Defendant TERRI SORENSEN is an individual who under information and belief resides in Oneida County, Idaho, and who acts as the Special Education Director for Defendant Oneida School District.

## JURISDICTION & VENUE

6.      Pursuant to the Individuals with Disabilities Education Act, Plaintiffs have exhausted their administrative remedies and are now aggrieved by the findings and decision of the Idaho Department of Education. Therefore, jurisdiction is proper. See 20 U.S.C. § 1415(i)(3)(A).

7.      This Court also has jurisdiction for claims under the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and for claims under 42 U.S.C. § 1983. See 28 U.S.C. § 1331 (federal question).

8.      This Court also has jurisdiction for actions to secure one's civil rights. See 28 U.S.C. § 1343(3) and (4) (actions to secure civil rights).

9.      This Court also has jurisdiction over Plaintiffs' state law claims. See 28 U.S.C. § 1367 (supplemental jurisdiction over state law claims)

10.      Any entitlement to notice Defendants may have had under Idaho's Tort Claims Act was provided on January 31, 2017, to which there was no response. See *Notice of Intent to Commence Action – with Receipts*, attached hereto as Exhibit "A." Such a requirement does not apply to claims in federal law.[1]

---

[1] See *Hallstrom v. City of Garden City*, 991 F.2d 1473, 1479 n. 9 (9th Cir. 1993) (affirming federal district court's dismissal of state-law claims for failing to file timely notice under the Idaho Tort Claims Act, but allowing federal constitutional claims to move forward); see also *BHA Invs., Inc. v. City of Boise*, 108 P.3d 315 (Idaho 2004) (failure to comply with notice requirements of Idaho Tort Claim Act does not bar . . . [plaintiff's] claim based upon the Takings Clause in the Constitution of the United States"); see also *Anderton v. Bannock* County, 4:14-cv-00114-BLW (Dist. Idaho Feb. 2, 2015) (citing with approval).

11.     Venue is properly had in the United States District Court for the District of Idaho. See 28 U.S.C. § 1391.

## GENERAL ALLEGATIONS

12.     B.S. is disabled, physically and cognitively. He is wheelchair bound, and cognitively, is several grades behind that of his peers.

**A.     Individuals with Disabilities Education Act**

13.     As a student of Defendant Oneida School District, B.S. was entitled to a Free, Appropriate, and Public Education ("FAPE"). Furthermore, Defendant Oneida School District was obligated to provide a FAPE to B.S. in as Least Restrictive Environment ("LRE") as possible.

14.     In its simplest terms, the Individuals with Disabilities Act is there to ensure that children with disabilities can, to the fullest extent possible, enjoy the same educational experience as children without disabilities. Such can be accomplished in a myriad of ways, from modified curriculums, student teaching aids, special service aids, modified transportation services, and specialized equipment.

15.     However, since B.S. was the age of three (3) Defendant Oneida School District has failed to provide B.S. with ordinary school transportation services. As a result, TIMOTHY SWOPE and MARLA SWOPE, B.S. parents, have been compelled to purchase an expensive van and lift system to facilitate B.S.'s transportation.

16.     On January 31, 2017, the Idaho Department of Education ordered that B.S. is not entitled to receive, and Defendant Oneida School District is not obligated to provide

B.S. with door-to-door transportation services. Namely, if B.S. wants to ride the bus, he will have to make himself available at the ordinary location, as other non-disabled children do. If B.S.'s parents cannot facilitate this, then Defendant Oneida School District not obligated to provide transportation. Rather, Defendant Oneida School District is solely obligated to pay B.S.'s parents 0.54 cents per mile, with no additional services.

17.     However, transporting B.S. to and from school each day requires expensive, specialized equipment. Furthermore, that specialized equipment requires maintenance that relative to an ordinary vehicle is excessive and expensive. In addition, the process of loading B.S. into TIMOTHY SWOPE's and MARLA SWOPE's van to and back from school takes on average approximately 40 minutes. It is 3 miles each way, with no traffic.

18.     On those rare occasions when B.S. has been allowed on the bus (e.g. a field trip from school), B.S. *truly* enjoys and cherishes his time on the bus with his peers. But save those rare experiences, B.S. is not allowed on the bus, and is harshly reminded on a daily basis that he is not provided the same services as his peers because of his disability.

19.     For the duration of B.S.'s education, Defendant Oneida School District has failed to provide B.S. with a safety plan and the equipment necessary for that plan.

20.     A mechanical lift, necessary to accommodate safe toileting procedures was needed and never purchased.

21.     In about November of 2015, Defendant Oneida School District hired a new employee, and contrary to TIMOTHY SWOPE'S express instruction to all of the Defendants, Defendant Oneida School District gave the new employee authority to disrobe

B.S. and provide toileting procedures. The new employee had never before helped B.S. with toileting, B.S. was not familiar with the new employee, was not comfortable with the new employee in that way, and most notably, Defendants gave the new employee false and dangerous instructions regarding toileting procedures. The instructions themselves placed B.S.'s physical wellbeing and life at risk.

22.    Even though a safety plan was discussed at IEP meetings, school staff and faculty were never provided with a safety plan regarding B.S.,

23.    Even though emergency drills were practiced for children without disabilities, no emergency drills were maintained to address B.S.'s particular needs.

24.    On January 31, 2017, the Idaho Department of Education determined that Defendant Oneida School District has provided B.S. an adequate, implemented safety plan.

25.    B.S.'s disability is degenerative in nature. Where once B.S. could walk, he is now wheelchair bound. Where once B.S. could lift certain items, reposition himself, and exercise a greater level autonomy, he is now entirely dependent on others. B.S.'s condition requires *specialized* curriculum and *specialized* care and aid services.

26.    Due to safety concerns and B.S.'s psychological suffering when aids would come and go, TIMOTHY SWOPE and MARLA SWOPE expressed concerns to B.S.'s healthcare provider regarding Defendant Oneida School District's refusal to provide B.S. with a consistent, full-time aid.

27.    B.S.'s healthcare providers were surprised and concerned, and by written recommendation informed Defendant Oneida School District that B.S. required consistent

care givers, and that the alternative would cause B.S. significant psychological trauma and subject B.S. to an increased risk for injury.

28.     Defendants disregarded the recommendation, citing specifically to the increased cost of "$10,000" per year in employee time and benefits should an aid be hired full-time. Therefore, pursuant to school policy, TIMOTHY SWOPE and MARLA SWOPE asked Defendants to reconsider. But contrary to school policy, Defendants, in a closed "executive session" meeting to which Plaintiffs were not invited, decided that B.S. did not need a full-time aid.

29.     TIMOTHY SWOPE and MARLA SWOPE raised their concerns – the lack of a safety plan, of appropriate equipment, of transportation, and of a full-time aid, and in response, Defendants denied the services and raised and encouraged TIMOTHY SWOPE and MARLA SWOPE to remove B.S. from school and place him on a part-time schedule. Defendants did not seek an evaluation to determine whether a removal from school was necessary, let alone appropriate.

30.     As a result, TIMOTHY SWOPE and MARLA SWOPE were compelled to remove B.S. from school and place B.S. on a part-time schedule where his part-time aid could attend. After such, a due process hearing was timely initiated, and on January 31, 2017 the Idaho Department of Education made its aggrieving decision.

**B.     Claims Outside the Individuals with Disabilities Education Act**

31.     From the first-grade forward, B.S. has been denied transportation services. During the course of that denial, Defendant Oneida School District never reimbursed

B.S.'s parents, TIMOTHY SWOPE and MARLA SWOPE for their time, vehicle, or the maintenance of that vehicle.

32.     From the first grade forward, B.S. has been denied of the opportunity to ride the school bus with his peers; or even enjoy a bussing experience similar to his peers. For B.S.'s peers, their school day started at the bus. The sociality, belonging, independence and autonomy, and educational experience that has become a hallmark of the American public school system, was for B.S., denied. As a result, B.S. suffered pain, suffering, and embarrassment on a regular, consistent basis.

33.     From first-grade forward, B.S. has lacked the strength and balance to climb stairs. However, for the first six (6) years of public education, B.S. was at the Malad Elementary School, a two-story building. Classes were held upstairs, there was no elevator, and Defendant Oneida School District failed to provide any accommodating equipment until after B.S. entered the 3rd grade and had become entirely wheelchair bound.

34.     Nearing the end of 2nd grade, an IEP transition meeting for B.S. was held. Defendant Oneida School District therein announced that it had hired a new 3rd grade teacher, who would hold classes downstairs. Based on this change, the Special Education Director, Terri Sorensen, openly stated that B.S. no longer needed to go upstairs. For the last month of B.S.'s 2nd grade, B.S. was prohibited access to the upstairs.

35.     In addition to being a two-story building, the Malad Elementary school had but one wheelchair-accessible restroom. The restrooms could have been modified to accommodate B.S.'s wheelchair, but for years, the Oneida School District left B.S. with

solely one option – the wheelchair accessible girl's restroom, located on the first floor. The boy's restroom downstairs, and the girl's and boy's restrooms upstairs, was not wheelchair accessible.

36.     For those years, getting to the girl's restroom downstairs, waiting for any girls to exit the restroom, and traversing back to his class upstairs, would take B.S. approximately 20-45 minutes.

37.     When B.S. wanted to use the boy's restroom upstairs or the boy's restroom downstairs, B.S. was compelled to wait for all other students to exit the restroom, and he would then be carried into the restroom for toileting.

38.     At the end of the 3rd grade, another IEP transition meeting was held. After repeated requests and pleading by B.S.'s parents, the principal of the Elementary School, Ms. Dottie Evanson, stated that the boy's restroom upstairs would finally be modified to accommodate a wheelchair. Principal Evanson later asked the maintenance engineer, John Christiansen, to perform the modification.

39.     Mr. Christensen made the modifications. However, afterwards but before the 4th grade started, Superintendent David Risenmay discovered the modifications and ordered that the changes be dismantled.

40.     On or about September 8, 2014, B.S. was using his electric wheelchair to exit the Malad Elementary School cafeteria doors. Defendant Oneida School District did not provide B.S. with an aid, and the pathway of travel abutted an 8-9" high sidewalk. There

was no safety bar or rail to stop B.S. from going over the sidewalk. As a result, B.S.'s wheelchair tumbled off of the 8-9" high sidewalk, causing B.S. to fall.

41.     B.S. electric wheelchair, some three hundred and fifty pounds (350lbs), landed on top of him.

42.     The School determined there was "no apparent injury" to B.S, and that the actions taken to stop this from happening again would be to ensure an aide's presence to "protect against the edges."

43.     Not long after B.S. fell, another wheelchair bound student fell from her at the same ledge.

44.     MARLA SWOPE took B.S. to the hospital, and unfortunately the Oneida County Hospital sent B.S. home without discovering the injury. B.S. continued to experience excruciating pain, and on September 15, 2014 MARLA SWOPE took B.S. to a children's hospital facility. An x-ray revealed a right proximal humerus fracture.

45.     Defendant Oneida School District administration have been overheard stating comments to the effect of:

>    a. "we don't need to spend much on these children because they won't amount to anything."
>
>    b. is it "fair that the district should have to pay parents to bring their handicapped kids to school?"

And there have been reports that one or more special education teachers of the Oneida School District have taken the ISAT testing for disabled children.

## FIRST CAUSE OF ACTION
### VIOLATION OF INDIVDIUALS WITH DISABILITIES EDUCATION ACT
(Defendant Oneida School District)

46.    Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

47.    Congress' purpose in enacting the Individuals with Disabilities Education Act ("IDEA") was to "ensure that all children with disabilities have available to them a free appropriate public education that emphasizes special education and related services designed to meet their unique needs and prepare them for further education, employment, and independent living." 34 CFR § 300.1(a).

48.    B.S. is entitled to receive and Defendant is obligated to provide education and instruction that is "specially designed . . . to meet the unique needs of a child with a disability," which is to be provided at no additional cost and must be provided where appropriate – whether in a classroom, in the home, at a hospital, or an institution. See 34 CFR § 300.39.

49.    B.S. is also entitled to receive and Defendant is obligated to provide "related services." 34 CFR § 300.34.

50.    Furthermore, Defendant must encourage and not do anything to obviate B.S.'s rights to a Least Restrictive Environment ("LRE").

51.    Defendant has failed to provide B.S. with a FAPE and has failed to maintain the LRE for B.S.' education. Related services of transportation have never been provided, and B.S., TIMOTHY SWOPE and MARLA SWOPE are aggrieved by the Department's

decision against door-to-door transportation. Such compels B.S. and his parents to choose between no transportation at all, or a payment in lieu of such services, is a violation of the Individuals with Disabilities Education Act.

52.      The Idaho Department of Education also established a woefully insufficient, time limited reimbursement rate for past transportation. By the Department's own order, and by stipulation of the parties, the issue of reimbursement was not "within the scope of the Individual with Disabilities Education Act," and as such the amount of reimbursement was not pursued at the Due Process Hearing. Contrary to its own Order, the Department on January then issued 31, 2017 issued a reimbursement award and order.

53.      Defendant has also failed to provide B.S. with the related services of a safety plan and the necessary safety equipment set forth in that plan. B.S., TIMOTHY SWOPE and MARLA SWOPE are aggrieved by the Department's decision that a draft, unimplemented and undistributed safety plan suffices.

54.      Defendant also failed to provide B.S. with related services of a full-time aid, placed B.S. in physical danger, and has increased his psychological suffering by supplying one or more part-time and inadequately trained aids. As a result, TIMOTHY SWOPE and MARLA SWOPE were compelled to remove B.S. into part time school.

55.      Defendant should not provide B.S. with special classes, separate schooling, or other removals from regular educational environments, unless the nature and severity of B.S.'s disability, with the use of appropriately supplied and placed supplementary aids,

precludes such a satisfactory education in regular classes. 34 CFR § 300.114. Such is not the case here.

56.     Plaintiffs are aggrieved by the Idaho Department of Education's decision, and ask this Court for relief.

## SECOND CAUSE OF ACTION
### DISCRIMINATION BASED UPON DISABILITY – TITLE II OF THE ADA
(All Defendants)

57.     Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

58.     Defendant Oneida School District is subject to the requirements of Title II of the Americans with Disabilities Act ("ADA"). Defendant is an instrumentality of the Oneida County, and also receives funding from one or more federal sources in providing educational programs, activities, and services to the public.

59.     Plaintiff B.S. is a "qualified individual with a disability" as defined by 42 U.S.C. § 12131(2). As set forth *supra*, Plaintiff is a student of Defendant Oneida School District, and is both physically and cognitively disabled.

60.     The ADA and its implementing regulations require that the Alternative Services be made available in the community rather than in institution where to do so will meet the needs of qualified individuals with disabilities, such as Plaintiff.

61.     Here, Defendants knew of B.S.'s disability. IEP meetings were held, which Defendants attended. B.S. had an IEP plan in place and also provided medical

recommendations to Defendants. Defendants knew, or should have known, the full extent of B.S.'s disability.

62.     Plaintiff B.S. has been and continues to be excluded or denied meaningful and safe access to the schools of the Oneida School District, its activities and its programs.

63.     As a result of Defendants' denial and exclusion of Plaintiff B.S. from the Oneida School District's schools, activities, and programs, Defendants have violated the ADA and discriminated against Plaintiff in a number of ways, by reason of his disability. Such includes, without limitation, the following: (i) excluding or denying access to school provided transportation; (ii) excluding or denying access to school; (iii) excluding or denying access to the restroom; (iv) excluding or denying access to a full day of school; and (v) excluding or denying safe navigation while at school.

64.     Defendants did not perform and cannot show that providing these services is a fundamental alternation of Oneida School District's school program. See *Townsend v. Quasim*, 328 F.3d 511 (9th Cir. 2003).

65.     Defendants failed to provide services to Plaintiff in the "most integrated setting" appropriate.

66.     Defendants' acts and omissions in relationship to B.S. have limited the availability of Alternative Services, based on the severity of need or disability.

67.     Denying Plaintiff the equal or same opportunity to receive the benefit(s) of Defendants' programs, activities, and services, which are available to other qualified

individuals, violates the ADA and it is not a fundamental alteration of the public school system to accommodate Plaintiff's request to receive services in a least restrictive setting.

68.     By expelling Plaintiff to part-time school, refusing to provide transportation services, and engaging in other conduct as set forth *supra* in a confining environment that isolates and excludes Plaintiff from his peers, Defendants' actions violate the *Olmstead* ruling by the undue institutionalization of Plaintiff where less confining service can satisfy Plaintiff's needs.

69.     Defendants also retaliated. Defendant Risenmay dismantled the wheelchair-accessible bathroom. Defendant Sorensen excluded B.S. from the upstairs of the school. Defendants, acting in concert, constructively removed B.S. from the school.

70.     Defendants acted intentionally, with willful misconduct, or with a deliberate indifference towards Plaintiff's rights as a qualified disabled person.

71.     As a result of the above Plaintiffs have been damaged in both general and special damages, the amount of which is to be proven at trial. Such retrospective remedies though not available under the I.D.E.A. are available by virtue of the ADA. See *Mark H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008).

## THIRD CAUSE OF ACTION
## VIOLATION OF THE REHABILITATION ACT
(All Defendants)

72.     Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

73.     Plaintiff B.S. is a "disabled/handicapped" individual as defined in 29 USC § 705. The Rehabilitation Act and its implementing regulations require that Defendants administer programs and activities in the most integrated setting appropriate to the needs of qualified handicapped/disabled persons. See 28 C.F.R. § 41.51 and 45 C.F.R. § 84.4.

74.     Plaintiff B.S. has been and continues to be excluded or denied meaningful and safe access to the schools of the Oneida School District, its activities and its programs.

75.     As a result of Defendants' denial and exclusion of Plaintiff B.S. from the Oneida School District's schools, activities, and programs, Defendants have violated the Rehabilitation Act and discriminated against Plaintiff in a number of ways, by reason of his disability. Such includes, without limitation, the following: (i) excluding or denying access to school provided transportation; (ii) excluding or denying access to school; (iii) excluding or denying access to the restroom; (iv) excluding or denying access to a full day of school; and (v) excluding or denying safe navigation while at school.

76.     Defendants' administration of the Oneida School District in relationship to B.S. has limited the availability of Alternative Services, based on the severity of need or disability.

77.     Denying Plaintiff the equal or same opportunity to receive the benefit(s) of Defendants' programs, activities, and services to the same extent as such are available to other qualified individuals violates the Rehabilitation Act, and providing such an opportunity would not be a fundamental alteration of the public school system.

78.     Defendants also retaliated. Defendant Risenmay dismantled the wheelchair-accessible bathroom. Defendant Sorensen excluded B.S. from the upstairs of the school. Defendants, acting in concert, constructively removed B.S. from the school after meeting in secret and denying Plaintiff with services. Defendants acted intentionally, or with a deliberate indifference towards Plaintiff's rights as a qualified disabled person.

79.     As a result of the above, and as the proximate cause, Plaintiffs have been damaged in both general and special damages, the amount of which is to be proven at trial. To the extent such retrospective remedies were not available under the I.D.E.A., for those actions that constituted a violation of the I.D.E.A., such remedies are made available by virtue of the Rehabilitation Act. See *Lemahieu, et. al.*, 513 F.3d 922 (9th Cir. 2008).

## FOURTH CAUSE OF ACTION
### VIOLATION OF 42 U.S.C. § 1983
(All Defendants)

80.     Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

81.     Defendants have deprived Plaintiffs of their federal constitutional and/or statutory rights by failing and refusing to provide Plaintiff B.S. with the educational and public service accommodations and modifications mandated by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution; the Americans with Disabilities Act; Section 504 of the Rehabilitation Act; the Individuals with Disabilities Education Act; and Idaho's Child Abuse statute.

82.     Defendant   Oneida   School   District,   Defendant   Risenmay   as   the Superintendent, and Defendant Sorensen as the Special Education Director, have as the arm of the County acted under the color of state law and, as set forth supra, have deprived Plaintiff B.S. of his federal rights, property interests and otherwise discriminated against Plaintiff based upon Plaintiff's disability.

83.     As a direct and proximate result of Defendants' violation of 42 U.S.C. § 1983, Plaintiffs have sustained injuries and damages that include, without limitation:

> i.   transportation and equipment costs
>
> ii.  deprivation of a free, appropriate, and public educational experience,
>
> iii. exclusion   from   facilities,   services,   and   activities   made   otherwise available to the public,
>
> iv.  lost income,
>
> v.   pain, suffering, embarrassment, humiliation, and
>
> vi.  mental distress

The approximate amount of damages incurred will be determined at trial.

## FIFTH CAUSE OF ACTION
### CHILD ABUSE
(All Defendants)

84.     Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

85.     Under Title 6 of the Idaho Code, a private right of action exists against any person who has "[i]njured a child as defined in section 18-1501, Idaho Code." I.C. § 6-1701.

86.     Under Idaho Code section 18-501, any person who "willfully causes or permits any child to suffer, or inflicts thereon unjustifiable physical pain or mental suffering, or having the care or custody of any child, willfully causes or permits the person or health of such child to be injured, or willfully causes or permits such child to be placed in such situation that its person or health may be endangered, is guilty . . . ." I.C. § 18-501(1)-(2).

87.     The tort action permitted under Idaho Code section 6-1701 extends to "employment-related circumstances" and actions that can be brought against the employee and the employer. I.C. § 6-1701(2).

88.     Damages include past and future damages, and can consist of emotional and physical pain and suffering, mental anguish, disability, loss of society and companionship, expenses for past and future therapy. See I.C. § 6-1703.

89.     Defendants injured a child, B.S., when they subjected B.S. to repeated humiliation; when they permitted B.S. to experience physical injury; when they subjected B.S. to the danger of an ill-trained new employee; and when they caused B.S. to incur significant discomfort and mental distress by refusing to provide B.S. with a full-time aid; and when they failed to make and implement a proper safety plan to meet B.S.'s specific needs as a disabled child.

90.     Defendants' actions took place on Defendant Oneida School District's premises, while Defendant Risenmay and Defendant Sorensen were under the former's employ, where it reasonably appeared that such Defendants were in Defendant Oneida School District's employ. Notwithstanding, Defendant Oneida School District's disregard for Plaintiff B.S.'s rights as a disabled person, and the repeated placement of B.S. in the way of humiliation, ridicule, and confrontation with life-threatening danger, set forth a grossly negligent, reckless, or willful and wonton disregard for the rights and safety of B.S.

91.     As a direct and proximate cause of Defendants' actions, B.S. was damaged and has incurred general and special damages, the amount of which to be proven at trial.

## SIXTH CAUSE OF ACTION
### INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
(All Defendants)

92.     Plaintiffs restate the prior allegations, incorporating them herein by reference as if restated with full force and effect.

93.     Defendants' conduct in refusing to provide transportation, in refusing to provide a full-time aid, in refusing and dismantling a wheel-chair accessible restroom, in barring Plaintiff B.S. from access to portions of the school, in leaving B.S. to fall off of a ledge and be physically injured, and in repeatedly subjecting Plaintiff B.S. to humiliation and embarrassment, was intentional in nature, or reckless.

94.     Defendants' conduct in refusing to provide transportation, in refusing to provide a full-time aid, in refusing and dismantling a wheel-chair accessible restroom, in barring Plaintiff B.S. from access to portions of the school, in leaving B.S. to fall off of a

ledge and be physically injured, and in repeatedly subjecting Plaintiff B.S. to humiliation and embarrassment, was extreme and outrageous.

95.     There was and continues to be a causal connection between Plaintiff B.S.'s emotional distress and Defendants' conduct. As a result of the disability, Plaintiff B.S. is predisposed to mental distress and anxiety, and B.S.'s anxiety and mental trauma has been significantly exacerbated by Defendants' actions in exposing B.S. to danger, ridicule, and an environment where his independence, autonomy, and quality of life were so significantly decreased. Medical attention has been required as a result of the physical manifestations of B.S.'s psychological trauma.

96.     B.S. has been damaged and claims general and special damages, the amount of which are to be determined at trial.

## JURY DEMAND

97.     In accordance with Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs hereby demand a trial by jury.

## PRAYER FOR RELIEF

The Court should award Plaintiffs with the following relief, in addition to any relief that the Court deems just and equitable under the circumstances:

98.     Reversal of the Department's Memorandum Decision (Jan. 31, 2017) and entry of a Judgment ordering Defendant Oneida School District to implement a safety plan, to provide a full-time aid, reinstate B.S. into full-time school, to provide B.S. with door-to-door transportation services, and all necessary related services and equipment.

99.     Judgment ordering Defendant Oneida School District to reimburse Plaintiffs TIMOTHY SWOPE and MARLA SWOPE for all past transportation services, equipment, and lost income incurred by them in taking their son B.S. to and from school, and to other activities wherein bussing to students was ordinarily provided;

100.    Judgment for general damages and special damages arising from Defendants' statutory and constitutional violations;

101.    Judgment for general and special damages arising from Defendants' intentional infliction of emotional distress;

102.    Prejudgment and post-judgment interest, court costs, and Plaintiffs' attorney's fees as permitted by state statute, federal statute, rule, regulation, contract, or equity; and

103.    Any other relief that the Court deems just and equitable under the circumstances.

DATED this 23<u>rd</u> day of May, 2017.

BEARNSON & CALDWELL, LLC


/s/ Aaron K. Bergman
Brad H. Bearnson
Wayne K. Caldwell
Aaron K. Bergman
*Attorneys for Plaintiffs*