# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY SWOPE and MARLA SWOPE, individually and on behalf of B.S., <br><br> Plaintiffs, <br><br> vs. <br><br> ONEIDA SCHOOL DISTRICT NO. 351, a county school district; DAVID RISENMAY, in his individual and official capacities; and TERRI SORENSEN, in her individual and official capacities, <br><br> Defendants. | No. 4:17-cv-113-MWB <br><br><br> **OPINION AND ORDER REGARDING PLAINTIFFS' MOTION FOR LEAVE TO AMEND** |

This case, on behalf of a disabled elementary school student, is before me on the plaintiffs' August 1, 2017, Motion For Leave To Amend. Somewhat more specifically, the proffered amendment is a Second Amended Complaint adding a new plaintiff, a new defendant, and a new claim. The defendants filed their Objection on August 9, 2017, and the plaintiffs filed their Reply on August 24, 2017.

## I. INTRODUCTION
### A. *Background*

In their Amended Complaint, Timothy and Marla Swope allege, on behalf of their son, BS, that BS is a wheelchair-bound student with physical and cognitive disabilities entitled to a free appropriate public education (FAPE) under the Individuals with Disabilities Education Act (IDEA). The defendants are the Oneida School District

No. 351, David Risenmay, the Superintendent for the District, and Terri Sorensen, the Special Education Director for the District. The Swopes assert several causes of action, arising, *inter alia*, from lack of appropriate transportation and bathroom facilities for BS, lack of facilities for BS to access the second floor and other portions of the school building, and from an accident on or about September 8, 2014, when BS's wheelchair tumbled off a sidewalk that lacked a safety bar or safety rail.

More specifically, the Swopes' first cause of action, against the District, is for violations of the IDEA in failing to maintain a least restrictive environment (LRE), adequate transportation services, or a safety plan for BS, failure to provide a full-time aid for BS, and improper removals of BS from the regular education environment. Their second cause of action, against all defendants, is for disability discrimination in violation of Title II of the Americans with Disabilities Act (ADA) based on BS's exclusion from and denial of meaningful and safe access to the schools of the District. Their third cause of action, against all defendants, is for violation of the Rehabilitation Act, essentially mirroring their ADA claim. Their fourth cause of action is for "violation of 42 U.S.C. § 1983,"[1] but is more properly described as a claim of violation of BS's right to equal

---

[1] Of course, one cannot "violate" § 1983. Section 1983 was designed to provide a "broad remedy for violations of federally protected civil rights," *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 685 (1978), but it provides no substantive rights. *Albright v. Oliver*, 510 U.S. 266, 271 (1994); *Graham v. Conner*, 490 U.S. 386, 393-94 (1989); *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979). "One cannot go into court and claim a 'violation of [42 U.S.C.] § 1983'—for [42 U.S.C.] § 1983 by itself does not protect anyone against anything." *Chapman*, 441 U.S. at 617. Rather, § 1983 provides a remedy for violations of all "rights, privileges, or immunities secured by the Constitution and laws [of the United States]." 42 U.S.C. § 1983; *see also Albright*, 510 U.S. at 271 (42 U.S.C. § 1983 "merely provides a method for vindicating federal rights elsewhere conferred"); *Graham*, 490 U.S. at 393-94 (same); *Maine v. Thiboutot*, 448 U.S. 1, 4 (1980) ("Constitution and laws" means 42 U.S.C. § 1983 provides remedies

(Footnote continued . . .

protection under the Fourteenth Amendment to the United States Constitution.[2] Their fifth cause of action, against all defendants, is for child abuse. Their sixth cause of action, against all defendants, is for intentional infliction of emotional distress.

On August 1, 2017, the Swopes sought leave to file a Second Amended Complaint, adding Denise Coombs as a plaintiff asserting claims on behalf of her disabled daughter, OC, and also adding as a defendant Kerry Adams, a member of the teaching faculty at the District's elementary school. The Second Amended Complaint alleges that OC is another largely wheelchair-bound elementary school student, one grade behind BS, but less than two months apart in age from BS. It also alleges that OC has suffered from the inaccessibility of parts of the school and injured her leg when she attempted to climb a stairway without adequate facilities. In the Second Amended Complaint, only the Swopes assert an IDEA claim, but Ms. Coombs joins in all of the Swopes' other claims. The Second Amended Complaint also adds a new claim of negligence, "in the alternative," against all defendants by all plaintiffs.

---

for violations of rights created by federal statute, as well as those created by the Constitution.). To state a claim under 42 U.S.C. § 1983, a plaintiff must establish: (1) the violation of a right secured by the Constitution or laws of the United States and (2) the alleged deprivation of that right by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988).

[2] The Swopes allege that this claim also encompasses violations of the ADA, the Rehabilitation Act, the IDEA, and Idaho's Child Abuse Statute. "Despite § 1983's broad wording, that section's availability as a remedy for violations of federal statutory or constitutional rights may be foreclosed in the event that Congress enacts a statutory scheme indicating an intent to preclude § 1983 suits." *Stilwell v. City of Williams*, 831 F.3d 1234, 1240 (9th Cir. 2016) (citing *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979)). Similarly, § 1983 provides no authorization for a claim of violation of state law. 42 U.S.C. § 1983. While I will not *sua sponte* limit the Swope's § 1983 claim, at this time, there are plainly some problems, likely insuperable, with the pleading of that claim.

## B.     *Arguments Of The Parties*

The Swopes argue that the proffered amendment is proper under Rule 15 of the Federal Rules of Civil Procedure, because leave to amend should be freely given, when justice so requires.  They contend that the claims on behalf of BS and OC are very similar and are probative, together, of the defendants' habitually discriminatory intent toward disabled students attending school in the District.  They point out that both children attended the Malad Elementary School; they are close in age and one grade apart; they are both disabled and wheelchair-bound; owing to their disabilities, both have suffered severe physical injuries while at the same school as a result of the school's lack of accommodations; they have both been denied access in and around the same school; and, while at the same school, both were overtly discriminated against on the basis of their disability.  They contend that a complete merger of these claims into one action is appropriate under Rule 42(a) of the Federal Rules of Civil Procedure in light of the similarities in their claims and the similarity of the location and witnesses involved.

In response, the defendants argue that a proffered amendment may be denied when, as here, it is prejudicial to the opposing party.  They contend that the proffered amendment is highly prejudicial, because the IDEA claim on behalf of BS has nothing to do with OC, the two students were allegedly injured in two separate incidents in different locations, and the claims of the two families involve two different sets of facts, which will permit introduction of prejudicial evidence that would normally be inadmissible as to one child in a trial involving claims of both children.  Indeed, they argue that some of the evidence about specific facilities relevant to one child is completely irrelevant as to the other.  They also argue that the undue prejudice is particularly apparent as to the original named individual defendants, who will be subjected to a trial involving evidence of alleged wrongdoing by others towards another child that is irrelevant as to them, and the same would be true as to the new individual defendant as to evidence relevant only

4

to BS. They also contend that, contrary to the Swopes' arguments, there would be, in effect, completely separate sets of records and two sets of witnesses, some of whom have no knowledge or information pertaining to one child or the other. Finally, they contend that, if the amendment is allowed, the new claims of the new plaintiff should not relate back to the time of the filing of the Swopes' original Complaint.

In reply, the Swopes belatedly argue that permissive joinder of the claims on behalf of OC is appropriate under Rule 20(a)(1) of the Federal Rules of Civil Procedure, because the claims on behalf of both children arise from the same occurrences or series of occurrences. They also argue that the claims on behalf of the two children involve the common question of discriminatory intent. Indeed, they argue that evidence about each child would be admissible as to the other child as Rule 404(b) "me too" evidence. They also contend that the defendants' "relation back" argument is a red herring, because the notices of the claims on behalf of both children were timely and/or that the timing issues on which the defendants rely have nothing to do with the federal claims at issue.

## II.   ANALYSIS
### A.   Applicable Standards

As a general matter, leave to amend pursuant to Rule 15(a)(2) should be "freely given." FED. R. CIV. P. 15(a)(2). As the Ninth Circuit Court of Appeals has explained,

> In *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962), the Supreme Court set forth the following standard regarding motions for leave to amend:
>
>> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits. In the absence of any apparent or declared reason—such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to

5

> cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment etc.—the leave sought should, as the rules require, be "freely given." Of course, the grant or denial of an opportunity to amend is within the discretion of the District Court, but outright refusal to grant the leave without any justifying reason appearing for the denial is not an exercise of discretion; it is merely abuse of that discretion and inconsistent with the spirit of the Federal Rules.
>
> *Id*. at 182, 83 S.Ct. 227. We have held that trial courts should determine whether to allow leave to amend by ascertaining the presence of four factors: bad faith, undue delay, prejudice to the opposing party, and futility. *Griggs v. Pace Am. Grp., Inc.*, 170 F.3d 877, 880 (9th Cir. 1999).

*In re Tracht Gut, LLC*, 836 F.3d 1146, 1151–52 (9th Cir. 2016). The parties' arguments, here, focus on the "prejudice" factor.

However, as the Swopes belatedly recognize, Rule 20(a)(1) controls permissive joinder of a new plaintiff, which is the principal effect of their proffered amendment.[3] The district court has authority to manage the process of joining additional parties. *Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165, 170–71 (1989). Rule 20(a) provides that plaintiffs may be joined in an action if they "assert any right to relief . . . arising out of the same transaction, occurrence, or series of transactions or occurrences" and a "question of law or fact common to all plaintiffs will arise in the action." FED. R. CIV.

---

[3] The Swopes should have sought leave to join the new plaintiff and the new defendant, pursuant to Rule 20, at the same time that they sought leave to file their Second Amended Complaint, pursuant to Rule 15. Furthermore, Ms. Coombs could simply have filed her own action, on behalf of OC, then the Swopes and Ms. Coombs could have moved to consolidate the two actions, for purposes of discovery or for both discovery and trial, pursuant to Rule 42.

6

P. 20(a)(1); *see also Coughlin v. Rogers*, 130 F.3d 1348, 1351 (9th Cir. 1997) (explaining the requirements for permissive joinder). Thus,

> [t]o join together in one action, plaintiffs must meet two specific requirements: (1) the right to relief asserted by each plaintiff must arise out of or relate to the same transaction or occurrence, or series of transactions or occurrences; and (2) a question of law or fact common to all parties must arise in the action. Fed.R.Civ.P. 20(a); *League to Save Lake Tahoe v. Tahoe Reg'l Planning Agency*, 558 F.2d 914, 917 (9th Cir.1977). If joined plaintiffs fail to meet both of these requirements, the district court may sever the misjoined plaintiffs, as long as no substantial right will be prejudiced by the severance. *See* Fed.R.Civ.P. 21; *Sabolsky v. Budzanoski*, 457 F.2d 1245, 1249 (3d Cir.1972).

*Coughlin*, 130 F.3d at 1351. "The first prong, the 'same transaction' requirement, refers to similarity in the factual background of a claim," and requires some "basic connection" beyond similar procedural treatment, such as "that their claims arise out of a systematic pattern of events" or a "pattern or policy." *Id*. at 1350. As to the "common questions" prong, "merely alleg[ing] that Defendants violated the same laws in comparable ways" as to additional plaintiffs is not enough. *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (citing *Coughlin*, 130 F.3d at 1351).

"Further, '[e]ven once these requirements are met, a district court must examine whether permissive joinder would 'comport with the principles of fundamental fairness' or would result in prejudice to either side.'" *Visendi v. Bank of Am., N.A.*, 733 F.3d 863, 870 (9th Cir. 2013) (quoting *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1296 (9th Cir. 2000)). Thus, for example, the Ninth Circuit Court of Appeals held that the district court properly denied joinder where a defendant would be prejudiced by having ten plaintiffs all testify about their terminations in the same trial, which also created the

7

possibility of juror confusion, and the claims of each plaintiff required examination of individual circumstances. *Coleman*, 232 F.3d at 1296.

The Swopes proffered Second Amended Complaint would also join a new defendant, which is controlled by Rule 20(a)(2). Essentially the same conditions for joinder of a plaintiff apply to joinder of a defendant: "Permissive joinder [of a defendant] is appropriate if a plaintiff's 'right to relief is asserted against [the defendants] . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences,' and also if there is a 'question of law or fact common to' the defendants." *Rush v. Sport Chalet, Inc.*, 779 F.3d 973, 974 (9th Cir. 2015) (quoting Rule 20(a)(2)). Moreover, joinder of a defendant requires consideration of essentially the same factors as joinder of a plaintiff: "the possible prejudice that may result to any of the parties in the litigation, the delay of the moving party in seeking an amendment to his pleadings, the motive that the moving party has in seeking such amendment, the closeness of the relationship between the new and the old parties, the effect of an amendment on the court's jurisdiction, and the new party's notice of the pending action." *Desert Empire Bank v. Ins. Co. of N. Am.*, 623 F.2d 1371, 1375 (9th Cir. 1980).

Thus, like amendment, joinder of either plaintiffs or defendants under Rule 20 may turn on the prejudice to the opposing party, and that is the basis for the defendants' objection to the proffered amendment, here.

### *B. Analysis*

The defendants point to numerous different or additional factual issues and/or occurrences that will enter the lawsuit if joinder of Ms. Coombs is allowed. Nevertheless, the Swopes have satisfied the first requirement of Rule 20(a)(1) in that their claims on behalf of BS and Ms. Coombs's claim on behalf of OC arise out of the same "series of transactions or occurrences." FED. R. CIV. P. 20(a)(1)(A); *Coughlin*, 130

8

F.3d at 1351. That is, they involve "similarity in the factual background of [the] claim[s]," and "basic connection[s]" indicating "that their claims arise out of a systematic pattern of events" or a "pattern or policy." *Coughlin*, 130 F.3d at 1350. More specifically, as the Swopes point out, the Second Amended Complaint alleges that both children attended the Malad Elementary School; they are close in age and one grade apart; they are both disabled and wheelchair-bound; owing to their disabilities, both have suffered severe physical injuries while at the same school as a result of the school's lack of accommodations; they have both been denied access in and around the same school; and, while at the same school, both were overtly discriminated against on the basis of their disability. Thus, the "connection" here is more than just procedural, *see id.* (noting that the only connection was similar procedural delays); rather, it goes to the very nature of the discriminatory treatment to which both were allegedly subjected.

As to the second prong of the analysis, the "common questions" prong, with the exception of the IDEA claim, which is asserted only on behalf of BS, all of the claims on behalf of the two children involve the same laws and violation of those laws in comparable ways. Although these similarities would not be enough, standing alone, *see Visendi*, 733 F.3d at 870, the common question that unites these claims is, as the plaintiffs argue, whether the defendants have a habitually discriminatory intent toward disabled students attending school in the District. "Me too" evidence provides some evidence of discriminatory motive, *see, e.g., Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998), forging a closer connection between the claims on behalf of the two children than mere violation of the same laws in comparable ways.

Essentially the same analysis of these two prongs leads me to conclude that the defendant, Kerry Adams, may also be properly joined. Although the current named defendants and Ms. Adams may have been involved in different occurrences, they were all involved in one way or another in the same "series of transactions or occurrences"

9

indicating that the plaintiffs' claims "arise out of a systematic pattern of events" or "pattern or policy," not simply out of the actions of a single defendant. Similarly, the common question of whether each of the defendants shared in a habitually discriminatory intent toward disabled students also joins the claims against Adams with the claims against the existing individual defendants. *Rush*, 779 F.3d at 974 (noting the two prongs of the analysis of joinder of a defendant under Rule 20(a)(2)).

The main thrust of the defendants' argument against amendment, however, is prejudice. *In re Tracht Gut, LLC*, 836 F.3d at 1151–52 (Rule 15 standards for amendment); *Visendi.*, 733 F.3d at 870 (Rule 20(a)(1) standards for joinder of a plaintiff); *Desert Empire Bank*, 623 F.2d at 1375 (Rule 20(a)(2) standards for joinder of a defendant). I do not find that either the existing defendants or the new defendant will necessarily be prejudiced in the way or to the extent that the current defendants contend. The defendants' objections to joinder are aimed entirely at the effect of a joint *trial*, to the same jury, of the claims on behalf of both children. However, evidence of comparable mistreatment of one child would likely fall within the scope of Rule 404(b) "bad acts" or "me too" evidence in the separate trial of the claims on behalf of the other child. *See, e.g., Godwin*, 150 F.3d at 1221. Also, joinder of a single additional plaintiff does not run the same risk of prejudice or confusion of the jurors as a parade of ten plaintiffs. *Compare Coleman*, 232 F.3d at 1296. Certainly, determination of whether the prejudicial effect of the evidence outweighs its probative value is better determined on a complete record, for example, on a pretrial motion in limine.

Also, here, where the defendants' concerns are primarily to a joint trial, the *better* point in the proceedings to assess the potential prejudice of evidence pertaining to each child against its probative value in a trial of both of their claims is after discovery and prior to trial, when the issues and evidence in the case have been clarified. At that point,

I can also give more reasoned consideration of whether it is appropriate to order separate trials, pursuant to Rule 20(b) and/or Rule 42(b), to avoid prejudice.

Similarly, while the defendants assert that the claims by Ms. Coombs on behalf of OC should not "relate back" to the filing of the Swopes's original Complaint or First Amended Complaint, I conclude that is also a question better addressed on a dispositive motion, preferably on a better developed record. This is so, because "relation back" depends upon whether evidence in the record shows that the defendant has timely notice of the suit. *See* FED. R. CIV. P. 15(c); *Miguel v. Country Funding Corp.*, 309 F.3d 1161, 1165 (9th Cir.2002) (as amended). Certainly, the defendants' showing so far falls well short of a demonstration that the proposed amendment is "futile." *In re Tracht Gut, LLC*, 836 F.3d at 1152 (recognizing that futility is a factor to consider in deciding whether to grant leave to amend).

### III. CONCLUSION

Upon the foregoing, the plaintiffs' August 1, 2017, Motion For Leave To Amend (docket no. 19) is **granted**.

**IT IS SO ORDERED**.

**DATED** this 1st day of September, 2017.

*Mark W. Bennett*
_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA
VISITING JUDGE