UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| TIMOTHY SWOPE and MARLA SWOPE, individually and on behalf of B.S., and DENISE COOMBS, individually and on behalf of O.C., <br><br>    Plaintiffs, <br><br>    v. <br><br>ONEIDA SCHOOL DISTRICT NO. 351, a county school district; DAVID RISENMAY, in his individual and official capacities; TERRI SORENSEN, in her individual and official capacities, and KERRY EVANS, in her individual and official capacities, <br><br>    Defendants. | Case No. 4:17-cv-00113-DCN <br><br> **MEMORANDUM DECISION AND ORDER** |

# I. INTRODUCTION

Pending before the Court is Defendants' Motion to Exclude Expert Testimony (Dkt. 88) and Plaintiffs' Motion to Exclude Expert Testimony (Dkt. 90).

Having reviewed the record and briefs, the Court finds that the facts and legal arguments are adequately presented. Accordingly, in the interest of avoiding further delay, and because the Court finds that the decisional process would not be significantly aided by oral argument, the Court will decide the Motion without oral argument. Dist. Idaho Loc. Civ. R. 7.1(d)(2)(ii). For the reasons outlined below, the Court will GRANT in PART and DENY in PART both motions.

## II. FACTUAL AND PROCEDURAL BACKGROUND

The background of this case is set forth in Judge Mark. W. Bennett's prior Order. Dkt. 80, at 5-21. The Court incorporates that background by reference here.

## III. LEGAL STANDARD

The extent to which experts may render an opinion is addressed under the well-known standard established in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), and its progeny, and now set forth in Rule 702 of the Federal Rules of Evidence. *See Moore v. Deer Valley Trucking, Inc.*, No. 4:13-CV-00046-BLW, 2014 WL 4956241, at *1 (D. Idaho Oct. 2, 2014).

Rule 702 establishes several requirements for the admission of expert opinion and testimony. First, the evidence offered by the expert must assist the trier of fact either to understand the evidence or to determine a fact in issue. *Primiano v. Cook*, 598 F.3d 558, 563 (9th Cir. 2010); Fed. R. Evid. 702. "The requirement that the opinion testimony assist the trier of fact goes primarily to relevance." *Id.* (internal quotation marks and citation omitted).

Additionally, an expert witness must be sufficiently qualified to render his or her opinion. *Id.* If specialized knowledge will assist the trier of fact in understanding the evidence or determining a fact in issue, a witness qualified by knowledge, skill, experience, training or education may offer expert testimony where: (1) the opinion is based upon sufficient facts or data, (2) the opinion is the product of reliable principles and methods; and (3) the witness has applied those principles and methods reliably to the facts of the case. Fed. R. Evid. 702; *Daubert*, 509 U.S. at 592–93; *Kumho Tire Co. v.*

*Carmichael*, 526 U.S. 137, 147 (1999). This inquiry is a flexible one. *Primiano*, 598 F.3d at 564. Ultimately, a trial court must "assure that the expert testimony both rests on a reliable foundation and is relevant to the task at hand." *Id.* (internal quotation marks and citation omitted).

Reliability and relevance, however, must be distinguished from problems with expert opinions that amount to impeachment and, consequently, do not warrant exclusion. *See City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (stating that, under *Daubert*, "[t]he judge is 'supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable.'" (quoting *Alaska Rent–A–Car, Inc. v. Avis Budget Grp., Inc.*, 738 F.3d 960, 969 (9th Cir. 2013))). Thus, "[a]s *Daubert* confirmed, '[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence.'" *United States v. Wells*, 879 F.3d 900, 933 (9th Cir. 2018) (quoting *Daubert*, 509 U.S. at 596).

## IV. DISCUSSION

At the outset, the Court must address Defendants' oft repeated contention that experts should either be entirely precluded, or their testimony limited, because claim preclusion should bar re-litigation of facts underlying Plaintiffs' IDEA claims that have already been decided. Defendants raise similar arguments regarding facts that pre-date relevant statutes of limitations.

The Court's prior order (Dkt. 135) recently addressed these arguments in greater detail. Thus, the Court will not restate its analysis here. Suffice it to say, these arguments

do not automatically warrant preclusion of any of the experts discussed below, or require limitations to their testimony. That said, pursuant to the Court's prior order (Dkt. 135), Defendants may raise a proper objection any time they believe an expert is attempting to provide testimony that is inadmissible.

That issue aside, the Court considers the parties' remaining arguments for each expert they seek to preclude.

### A. Defendants' Motion to Exclude Expert Testimony (Dkt. 88)

**Carrie Igondjo**

Defendants assert that Igondjo was retained by Plaintiffs as an expert to address issues connected to Plaintiffs' IDEA claims. As Plaintiffs' IDEA claims have now been resolved, Defendants contend that Igondjo's testimony would be irrelevant and inadmissible. Dkt. 88, at 12. Plaintiffs have not offered any response or counter argument regarding Igondjo's potential testimony. As such, the Court GRANTS Defendants' Motion to Exclude Igondjo's testimony.

**Russell Vollmer**

Defendants claim that they repeatedly requested counseling records related to Vollmer's time working at A to Z Counseling, and that Plaintiffs have failed to produce those records. Plaintiffs counter that they produced all of the records they had access to and made a good faith effort to obtain the records requested by Defendants. Plaintiffs further assert that Defendants themselves failed to diligently pursue these records.

The Court is not going to trouble itself with the parties' respective finger pointing. In short, it appears Plaintiffs made a good faith effort to obtain the records, even though

those records were not in their possession or control. Unfortunately, they have been unable to obtain them.

Defendants contend that without these records, they will not be able to "identify, review, or confirm" what B.S.'s "baseline" is. Dkt. 88-1, at 8. This concerns Defendants because "[o]n page 3 of his report, Mr. Vollmer states 'In making my above observations in detecting [B.S.'s] mental status, it is essential to understand where his baseline is.'" *Id*. However, Defendants have had the opportunity to depose Vollmer, and received at least 522 pages of Vollmer's counseling records related to B.S. Presumably, this should be sufficient for Defendants to prepare for trial and be ready to cross-examine Vollmer. While they may be missing records from Vollmer's time at A to Z, the Court finds that this omission of records does not *necessarily* warrant excluding Vollmer's expert testimony.

That said, this decision may have been different if the Court had a clearer understanding of how significant the information contained within the A to Z Counseling records is to Vollmer's opinions. If, at trial, it becomes apparent that Vollmer's opinions and testimony are heavily influenced by his interactions with B.S. while working at A to Z Counseling, the Court may then decide that Vollmer cannot share those opinions with the jury because Defendants have had no opportunity to review the A to Z Counseling records.

Next, Defendants argue that Vollmer has no factual basis to provide opinions about how the District impacted O.C.'s mental or emotional status. Vollmer has previously testified that he is not fully aware of the events underlying this case, nor can

he say that the District's action caused harm to the Plaintiffs. In fact, during his deposition, Vollmer stated that he had "no idea" regarding whether the District caused O.C.'s anxiety.

In light of this admission, the Court struggles to see how Vollmer has the necessary factual basis to render an opinion on this issue (whether the District caused harm to the children), and the Court will not allow him to provide unsupported speculation to the jury. However, if Plaintiffs' intent is to use Vollmer for some other purpose—such as simply providing his professional opinion that O.C. did, in fact, suffer from anxiety in general—then Vollmer may be qualified to render such an opinion. Thus, the Court will not entirely exclude Vollmer from testifying as an expert at this time.

**Dean Nielson**

Defendants argue Nielson did not rely upon proper standards when forming an opinion about whether the District complied with ADA requirements. Thus, they say his opinions do not rely upon the appropriate legal foundation. Specifically, Nielson relied upon a checklist created by the New England ADA Center. On its website, the Center states: "Since this checklist does not include all of the 2010 [DOJ ADA] Standards it is not intended to determine compliance for new construction or alterations." Dkt. 88-8, at 2.

Plaintiffs contend that this argument is meritless. They explain:

> Mr. Nielsen conducted two separate physical inspections. Mr. Nielson also discussed the matter personally with Marla Swope, Timothy Swope, and Denise Coombs. Mr. Nielson reviewed the past department of health facility reports. He reviewed the original 1953 building plans. He reviewed the 1973 and 1992 remodeling plans of the Music Room and Library. In performing

> the inspection, Mr. Nielson used as a tool two checklists produced by the "New England ADA Center, a project of the Institute for Human Centered Design, which checklist was developed "under a grant from the Department of Education, NIDDRR grant number H133A060092-09A." The New England ADA Center identifies its checklist as a "friendly and easy to use tool that will help you identify barriers to accessibility." The checklist is an 89 page document altogether, and even though the checklist pertains to the 2010 ADA Standards, Mr. Nielson was aware of the differences in the older standards. Mr. Nielson also utilized publications from the Department of Justice Code of Federal Regulations, depicting the differences between certain ADA standards. Mr. Nielson also relied upon the program accessibility requirements and standards as set forth in the 1991 and 2012 ADA accessibility standards. Mr. Nielson's methods were and are completely acceptable within his industry, which notably, is geared specifically towards the assuring of accessibility for disabled persons.

Dkt. 94, at 40.

The Court agrees with Plaintiffs. The mere fact that Nielson used a checklist that did not include all of the 2010 standards, and was not meant to determine compliance, does not mean Nielson could not use the checklist to aid him in his overall assessment.

Defendants' arguments do not account for Nielson's personal knowledge, training, and other qualifications. Defendants also do not address Plaintiffs' assertion that the checklist was merely one tool amongst others Nielson relied upon in his assessment, and that he was fully aware of the checklist's shortcomings at the time of its use. As such, the Court will not preclude Nielson as an expert for this reason.

Regardless, Defendants contend that Nielson's opinions regarding B.S.'s fall on September 8, 2014, O.C.'s fall on April 7, 2016, as well as his opinions regarding the school's stair climber are not based upon any facts obtained by Nielson himself. Therefore, the District argues that his opinions lack proper factual support and are irrelevant.

However, expert testimony does not have to be based on personal knowledge. *See* Fed. R. Evid. 602; Fed. R. Evid. 703. Expert testimony may be based on facts "that the expert has been made aware of." Fed. R. Evid. 703. Likewise, experts can base their opinions on inadmissible evidence such as hearsay. *Id.* The question is not whether Nielson's opinions are based on events he personally observed, but whether "experts in the particular field would reasonably rely on those kinds of facts . . . in forming an opinion on the subject." *Id.*

At the time of his deposition, Nielson did not know every detail related to B.S.'s or O.C.'s fall, nor did he obtain his knowledge as an eye-witness. That said, Plaintiffs are not offering Nielson's testimony to prove the falls occurred. Rather, it appears Plaintiffs' intend to offer Nielson's testimony as an opinion regarding the school's compliance with ADA standards. As such, the Court finds Nielson—after examining the school and being informed of some of the alleged incidents at issue in this case—has enough information to render an opinion on ADA compliance.

The Court understands Defendants' concerns, but finds cross-examination is the proper route for addressing these concerns, rather than exclusion. The Court is "supposed to screen the jury from unreliable nonsense opinions, but not exclude opinions merely because they are impeachable." *Alaska Rent-A-Car*, F.3d at 969 (9th Cir. 2013). Here, the Court does not believe Nielson's opinions would be "unreliable nonsense." Any shortcomings in his testimony may be properly highlighted through cross-examination.

Obviously, the Court does not mean to imply that Nielson (or any other witness) will be free to provide unsupported speculation while testifying. If his testimony heads in

such a direction, Defendants may lodge an appropriate objection at that time.

**Jennifer Putnam**

Defendants contend that Putnam's testimony and/or opinions pertain to Plaintiffs' IDEA claims. Additionally, they argue that most of her testimony would be focused on events that occurred prior to March 14, 2015, and thus will be irrelevant and material.

Pursuant to the Court's recent order (Dkt. 135), the Court will not preclude Putnam as an expert at this time because her testimony may still be relevant and admissible.

**Tim Swope, Marla Swope, and Denise Coombs**

Defendants assert that the parents of B.S. and O.C. are not qualified to provide expert opinions in this case, and instead will provide testimony based on feelings and emotions.

Plaintiffs correctly point out that formal education or training is not the only factors that can qualify someone to testify as an expert. Indeed, Rule 702 says that a witness qualified by knowledge, skill, experience, training or education may offer expert testimony. Here, it is likely that the parents of B.S. and O.C. have extensive knowledge of their child's disabilities, and how those disabilities affect their child's day to day life. It is not uncommon for parents to gain a deep and thorough understanding of medical conditions that their children suffer from. This knowledge is often gleaned from countless conversations with medical doctors, personal research, and the day-to-day care of their child. That said, at trial, Plaintiffs must still establish—through foundational questions regarding experience, training, etc., —that any of these parents intending to offer expert

MEMORANDUM DECISION AND ORDER - 9

opinion are qualified to do so.

Thus, the Court will not preclude the parents as experts at this time. If, upon being called to testify, their expertise is established, the Court will allow them to testify as expert witnesses. However, their expert testimony will be strictly limited to describing the nature of their child's medical conditions and how those condition affect their daily lives. Beyond that, the parents may only testify as lay witnesses.

**<u>Lloyd Sorenson</u>**

Defendants assert that Sorenson's testimony would be exclusively focused on transportation issues that were part of Plaintiffs' IDEA claims. As those claims have now been resolved, Defendants argue that Sorenson should be precluded.

Plaintiffs counter that Sorenson is anticipated to provide evidence that door-to-door transportation was always feasible, which is contrary to the District's position in this case. Thus, Sorenson will be used to impeach the District's contentions.

Additionally, Plaintiffs argue that Sorenson's testimony is relevant to their claim that the District violated § 504 of the Rehabilitation Act by not providing adequate transportation services. Plaintiffs' response brief indicates why transportation issues remain relevant in this case—even though their IDEA claims have been decided. They state:

> Pursuant to the Hearing Officer's decision below, and this Court's affirmation of that decision, the IDEA did not require the District to provide BS with actual transportation. *See* Dkt. 80, pp. 142-144, 147-148. . . . But that is not all. There is section 504 of the Rehabilitation Act. As the Ninth Circuit explained in *H. v. Lemahieu*, 513 F.3d 922 (9th Cir. 2008), "[w]hile the IDEA focuses on the provision of appropriate public education to disabled children, the Rehabilitation Act of 1973 more broadly addresses the

provision of state services to disabled individuals." *Id.* at 929. Under 34 C.F.R. § 104.37(a)(2), such services include "transportation" provided in the academic setting (identified as "nonacademic services"). Any District which receives federal funding "shall provide nonacademic and extracurricular services and activities in such a manner as is necessary to afford handicapped students an equal opportunity for participation in such services and activities." *Id.* at § 104.37(a)(1). Under § 504, "[d]iscriminatory actions prohibited" include "[d]eny[ing] a qualified handicapped person the opportunity to participate in or benefit from the aid, benefit, or service." 34 C.F.R. § 104.4(b)(i). . .

Under section 504 of the Rehabilitation Act, the defendant district was long providing a public service of transportation to nondisabled students, and on the farce that a barrier made providing that service infeasible, the District refused to provide the service to BS until 2018. Far from impossible or infeasible, the Department of Education intervened, and accomplished the needed transportation in less than ten (10) days. Whether such was necessitated by § 504, or even by § 1983 and BS's rights and those of his parents to equal treatment under the law, Mr. Sorensen"s relevance is patent.

Dkt. 94, at 35-36.

The Court agrees with Plaintiffs that Sorenson's testimony remains relevant and will not preclude him as an expert at this time.

### *B. Plaintiffs' Motion to Exclude Expert Testimony (Dkt. 90)*

#### Craig Beaver

Following Plaintiffs request that the Court exclude the testimony of Craig Beaver, Defendants' withdrew Beaver as an expert witness. Dkt. 93, at 2. Accordingly, Plaintiffs' request as to Beaver is MOOT.

#### Kindel Mason

Plaintiffs contend that Mason's expert testimony will deal exclusively with whether the District violated the IDEA. Thus, they argue his testimony is irrelevant to the remaining claims, will waste time, cause juror confusion, and result in unfair prejudice.

Defendants counter that, although Mason's role as an expert is primarily geared towards IDEA claims that have already been decided, his testimony will still be relevant if the Court does not find that issue preclusion bars the same facts underlying Plaintiffs' IDEA claims from being introduced in support of Plaintiffs' ADA and § 504 claims. Specifically, Defendants assert that they can use Mason's testimony that they complied with the IDEA to refute the contention that they intentionally discriminated against Plaintiffs or were deliberately indifferent to Plaintiffs' needs.

This situation appears different from Defendants' request to preclude Plaintiffs' expert witnesses because of issue preclusion. There, Defendants argue that—even if Plaintiffs' experts are providing opinions regarding the ADA and § 504—the Court should not allow them to provide opinions/testimony based on the same facts that Plaintiffs' IDEA clams were based upon. In essence, Defendants argue that, even though a different statute is at play, the facts and legal requirements are so similar that issue preclusion applies.

Here, however, Defendants do not seem to argue that Mason's testimony is directly relevant to the remaining claims or that he has expertise regarding other laws. In fact, they acknowledge that his testimony is geared primarily towards the District's compliance with the IDEA. As a result, the Court struggles to see the value of allowing Mason to testify. While Mason undoubtably appears qualified to provide expert testimony regarding the District's compliance with the IDEA, it is less clear whether he has any expertise or opinions regarding the District's compliance with other laws—even when the same underlying facts are involved. *See* Dkt. 90-2, at 3-5. Since the IDEA

claims have already been decided, the Court finds Mason's testimony will be irrelevant and unhelpful.

The Court is also unpersuaded that Mason's opinion that the District complied with the IDEA should be allowed as evidence to refute Plaintiffs' claims of discrimination or deliberate indifference. As the Ninth Circuit has explained:

> The IDEA primarily provides parents with various procedural safeguards. . . . The core of the statute is the cooperative process that it establishes between parents and schools.
>
> The IDEA does have a substantive component, but a fairly modest one: The IEP developed through the required procedures must be reasonably calculated to enable the child to receive educational benefits. The IDEA does not require states to provide disabled children with a potential-maximizing education. This access-centered standard means that, for a child being educated in mainstream classrooms, an IEP is substantively valid so long as it is reasonably calculated to enable the child to achieve passing marks and advance from grade to grade. . . .
>
> [T]he IDEA and Title II differ in both ends and means. Substantively, the IDEA sets only a floor of access to education for children with . . . disabilities, but requires school districts to provide the individualized services necessary to get a child to that floor, regardless of the costs, administrative burdens, or program alterations required. Title II and its implementing regulations, taken together, require public entities to take steps towards making existing services not just accessible, but equally accessible to people with . . . disabilities, but only insofar as doing so does not pose an undue burden or require a fundamental alteration of their programs.

*K.M. v. Tustin Unified Sch. Dist.*, 725 F.3d 1088, 725 F.3d 1088, 1095-96 (9th Cir. 2013) (punctuation and citations omitted).

As this discussion illustrates, the IDEA is different from the ADA (and other, related statutes) in both ends and means. Simply complying with the IDEA does not

prevent the District from being held liable under the ADA or § 504[1]—nor is it relevant to determining if the District discriminated against O.C. or B.S.

Regarding Plaintiffs' claims of deliberate indifference (which Defendants assert Mason will rebut by testifying about IDEA compliance), whether IDEA compliance is relevant to the issue is debatable. However, because Plaintiffs' IDEA claims have been decided, and are no longer involved in this matter, any relevance would be minor.

Additionally, allowing Mason to discuss IDEA compliance as evidence that other legal duties were met risks confusing the issues and, as a result, confusing the jury. Further, Defendants are unlikely to be prejudiced if the Court precludes Mason from testifying in this manner because their other experts—with expertise and opinions geared towards laws still at issue in this case—may properly weigh in on the issue of deliberate indifference.

Thus, Plaintiffs' Motion as it relates to Mason is GRANTED.

**Robert L. Smith**

Plaintiffs' ask the Court to partially exclude the testimony of Smith. Specifically, Plaintiffs contend that in his prior order, Judge Bennett indicated that the DOJ's 2008 ADA standards should be used (rather than the DOJ's 2010 standards) to determine whether the school sidewalk was ADA compliant, because the sidewalk was built in

---

[1] The Court does not mean to imply that compliance with the IDEA could never equate (or be relevant) to compliance with the ADA or § 504. The Court here is speaking in general terms. Indeed, as the Court's prior order (Dkt. 135, at 11 n.2) explains, the Ninth Circuit has found that a claim predicated on finding a violation of § 504's FAPE standard will fail if the IDEA FAPE requirement has been met. Here, however, Plaintiffs' contend that their § 504 claims allege discrimination rather than violations of § 504's FAPE standard.

MEMORANDUM DECISION AND ORDER - 14

2008. *See* Dkt. 80, at 92. Plaintiffs' concern appears to be that Smith will use the 2010 standards as the basis for his expert opinion regarding the sidewalk.

In their response, Defendants indicate that Smith will not do so. The 2010 standards may be used to inform his opinion about other matters, but not whether the sidewalk was in compliance with the ADA. Accordingly, Plaintiffs' request as to Smith is also MOOT.

## V. ORDER

1. Defendants' Motion to Exclude Expert Testimony (Dkt. 88) is GRANTED in PART and DENIED in PART.

2. Plaintiffs' Motion to Exclude Expert Testimony (Dkt. 90) is GRANTED in PART and DENIED in PART.

DATED: April 23, 2019

_____
David C. Nye
Chief U.S. District Court Judge